UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ROBERTO AYALA,** *et al.,*

    **Plaintiffs,**

          **v.**

**TITO CONTRACTORS,** *et al.,*

    **Defendants.**

Civil Action No. 13-1603 (JEB)

**MEMORANDUM OPINION**

Plaintiffs are laborers who performed construction and carpentry work for Defendant Tito Contractors at various project sites in the Washington metropolitan area. They brought this action against Tito and its owner seeking unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 207. Plaintiffs now file this Motion for Conditional Class Certification under the FLSA's "collective action" provision, 29 U.S.C. § 216(b), attempting to create a conditional class of current and former Tito laborers. Defendants oppose, arguing that the proposed class does not consist of "similarly situated" individuals. Because the Court finds that Plaintiffs have made the required "modest factual showing" that the putative class members are similarly situated, it will grant their Motion, conditionally certify the proposed class, and provide further parameters for identifying and giving notice to class members.

**I.**     **Background**

According to the Complaint, which must for now be presumed true, Tito is a contracting company that "provide[s] construction services to customers, including landscaping, masonry, electrical work, carpentry, and painting at various locations in the District of Columbia, Maryland, and Virginia." Compl., ¶ 19. Plaintiffs are seven laborers who work for Tito, which,

1

since October 2010, has employed over 100 hourly or salaried employees assigned to the different project sites. See id., ¶ 21. Although Tito was statutorily obligated to pay 150% of the employees' hourly rate for overtime work, it routinely required Plaintiffs and others to work over 40 hours per week without such payment. See id., ¶¶ 24-26. In fact, Tito knew and "often insisted" that they work 60-80 hours per week. Id., ¶ 27. Tito, moreover, "directed and forced Plaintiffs and similarly situated employees to underreport the number of hours worked each week," id., and failed to keep accurate time records. See id., ¶¶ 33-34.

Plaintiffs filed this lawsuit on October 18, 2013, alleging violations of the FLSA – as well as the D.C. Minimum Wage Act, the Maryland Wage and Hour Law, and the D.C. and Maryland Wage Payment and Collection Laws – and common-law breach of contract and *quantum meruit*. See id., ¶¶ 66-106. They have now moved for conditional class certification, and in the interim have filed three Notices indicating that 16 additional potential class members have opted in. See ECF Nos. 7 (First Notice), 9 (Second Notice), 14 (Third Notice).

**II.    Analysis**

In bringing this Motion, Plaintiffs argue that the Court should conditionally certify their class and require Tito to help them identify and notify class members. The Court will begin by outlining the law regarding conditional certification in FLSA cases and then apply it to the allegations here. Finding certification appropriate, the Court will last resolve certain disputes between the parties about identification and notification procedures.

   A.   FLSA Collective Actions

The FLSA forbids employers from requiring an employee to work "workweek[s] longer than forty hours unless such employee receives compensation for his employment in excess of [40 hours] at a rate not less than one and one half times [his] regular rate." 29 U.S.C.

§ 207(a)(1). Aggrieved employees asserting violations of this or other substantive FLSA provisions may bring actions on their own behalf and that of "other employees similarly situated" in a collective action. 29 U.S.C. § 216(b). "This unique cause of action . . . is not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23." Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 117 (D.D.C. 2004); see also Castillo v. P & R Enterprises, 517 F. Supp. 2d 440, 444 (D.D.C. 2007).

Although the D.C. Circuit has not yet spoken on the issue, "[c]ourts in this Circuit and others have settled on a two-stage inquiry for determining when a collective action is appropriate." Dinkel v. MedStar Health, Inc., 880 F. Supp. 2d 49, 52 (D.D.C. 2012). At the first stage, "the court mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (citations and quotation marks omitted) (emphasis added); see also Dinkel, 880 F. Supp. 2d at 52-53 (collecting cases). This stage requires only "a 'modest factual showing sufficient to demonstrate that [named] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Castillo, 517 F. Supp. 2d at 445 (quoting Chase v. AMICO Props., 374 F. Supp. 2d 196, 200 (D.D.C. 2005)). "Such a showing, as an initial matter, satisfies the FLSA requirement that putative class members be similarly situated to the plaintiffs, . . . and is ordinarily based mostly on the parties pleadings and affidavits." Encinas v. J.J. Drywall Corp., 265 F.R.D. 3, 6 (D.D.C. 2010) (internal quotations omitted); see also Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 n.8 (5th Cir. 1995); McKinney v. United Stor-All Ctrs., Inc., 585 F. Supp. 2d 6, 8 (D.D.C. 2008). If a plaintiff can make this showing, a court will conditionally certify the class. At the second stage, defendants may move at the close of discovery to decertify the conditional class if the

record establishes that the plaintiffs are not, in fact, similarly situated. See Castillo, 517 F. Supp. 2d at 445.

The bar for a plaintiff at the first stage of the process is not high. See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008) (describing plaintiff's burden as "not particularly stringent," "fairly lenient," "flexible," and "not heavy") (internal citations and footnotes omitted); Dinkel, 880 F. Supp. 2d at 52 (describing "a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist") (internal citations omitted); McKinney, 585 F. Supp. 2d at 8 ("The court employs a lenient standard in making this determination . . . ."). Indeed, all that is needed is "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [a plaintiff] and the manner in which it affected other employees." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011) (internal citation omitted), rev'd on other grounds, 133 S. Ct. 1523 (2013). "Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996) (internal citations and quotation marks omitted). During the second stage, a court's inquiry is typically more searching. See, e.g., Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 51 (3d Cir. 1989) (at second stage, courts examine whether all putative class members "(1) [were] employed in the same corporate department, division and location; (2) advanced similar claims []; and (3) sought substantially the same form of relief."), overruled on other grounds by Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089 (3d Cir. 1995).

### B. Propriety of Certification Here

The Court finds Plaintiffs clear the low first-stage hurdle here. The class that Plaintiffs seek to certify comprises "all individuals who are or have been employed by Defendants [] as laborers since October 18, 2010." Mot. at 1-2 (footnote omitted). They allege that the potential class members are similarly situated inasmuch as they were all laborers who "performed a variety of construction, carpentry, and odd jobs" for Tito; were assigned to work at particular job sites by Tito; were often required to work more than 40 hours per week; were routinely not paid for overtime work; and were directed to underreport their hours. See Compl., ¶¶ 19-27, 36. Plaintiffs have also submitted several declarations in conjunction with this Motion, which aver these same facts. See, e.g., Mot., Exh. C (Declaration of Mauricio Bautista) (as laborer and supervisor, directed to over 100 different project locations in past three years; typically worked 60-80 hours per week, as did others; not paid overtime rate; hours underreported).

The facts Plaintiffs marshal here are consistent with those that have supported conditional class certification in other cases in this Circuit. For example, the Castillo court found that a putative class of janitorial employees was similarly situated where they "were employed by Defendant to clean commercial real estate buildings in Washington, D.C. . . . [and] were scheduled for, and worked more than, 40 hours per week, and were not compensated for overtime pay." See 517 F. Supp. 2d at 446 (internal citations omitted). While the class members worked in different buildings, had different job titles, only some were unionized, and some were full-time workers and some part-time, the court found those distinctions "immaterial . . . because the proposed class definition . . . focuses only on whether the employees were not paid overtime for more than 40 hours worked in a workweek." Id. at 447; see also Douglas v. Chariots for Hire, No. 12-429-JEB (D.D.C. Jan. 24, 2013), ECF No. 42 (Memorandum Opinion and Order)

5

(conditionally certifying class of limousine drivers who were treated as independent contractors, not employees, and subject to common policies designed to avoid paying overtime).

Defendants raise three principal arguments against certification here, none of which is availing. First, they contend that Plaintiffs' supporting affidavits are insufficiently specific. See Opp. at 7-8. In doing so, Defendants rely on Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106 (2d Cir. 2013), for the proposition that a certain workweek must be specified. See id. at 114. Yet Lundy was a case in which there were real questions about whether the plaintiffs had actually worked more than 40 hours in a given week, and the Court had to weigh 30-minute meal breaks and 15-minute additions around shifts to see if all the time added up to more than 40 hours. Id. at 114-15. This case, at least according to the allegations and affidavits, is a far cry from that scenario, since Plaintiffs often worked 60-80 hours (and up to 84 hours) per week. The Court thus finds that the allegations and affidavits are not impermissibly vague.

Second, Defendants maintain that Plaintiffs have not established the existence of any uniform policy violating the FLSA. See Opp. at 9-10. Whether or not Defendants' policies contravened the FLSA, however, is not a question for this stage: "At this stage [in the certification process], district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits." Dinkel, 880 F. Supp. 2d at 53 (citing Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007), and Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 520 (D. Md. 2000)). To the extent Defendants argue lack of uniformity, that is not the standard. See, e.g., Grayson, 79 F.3d at 1096 ("Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members.") (internal citations and quotation marks omitted).

Defendants last assert that their pay policies are dictated by the individual contract for each project and do not operate as a uniform scheme. See Opp. at 10-11. Once again, uniformity is not a prerequisite, and Plaintiffs here have certainly proffered sufficient evidence to show they are similarly situated.

A brief caveat is worth insertion here. It should be clear that in conditionally certifying this proposed class and permitting the matter to proceed as a collective action, the Court makes no comment on the merits of the case, nor even about the likelihood that the proposed class would survive a motion to decertify under the more searching inquiry applied at that stage. Rather, the Court holds only that Plaintiffs have shown "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [Plaintiffs] and the manner in which it affected other employees." Symczyk, 656 F.3d at 193 (internal citation omitted). Because of the lenient standard applied at this point, this showing is sufficient to conditionally certify a collective action under § 216(b) of the FLSA.

C. Notice and Identification Procedures

This determination is not the end of the affair. Instead, the Court must now resolve four particular disputes regarding how other class members may be identified and notified.

First, Plaintiffs have sought identifying information about potential class members from Defendants, whose only resistance concerns telephone numbers, which they argue should not be disclosed. Compare Hernandez v. Immortal Rise, Inc., No. 11-4360, 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012) ("Since defendants fail to present any compelling reason for the Court to exercise particular caution in this case, and plaintiffs state that all provided information shall remain 'confidential,' the Court finds no reason to exclude discovery of opt-in plaintiff telephone numbers at this time.") (citation omitted), with Encinas, 265 F.R.D. at 7 ("Because plaintiffs

have not specially justified their need for access to putative class members' phone numbers, the defendants will be ordered to produce only the names and last known addresses of putative class members."). As Defendants raise no special concerns and as many potential plaintiffs do not speak English as a first language – thus making them harder to contact – the Court believes the balance favors requiring Defendants to provide phone numbers.

Second, Plaintiffs ask that notice of this suit be posted at all of Defendants' job sites, and Defendants oppose posting at facilities other than their own. Neither side contests that the Court has discretion with regard to notice, see, e.g., Engers v. AT&T, No. 98-3660, 2007 WL 1557163, at *1 (D.N.J. May 24, 2007) ("Decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion.") (citation omitted), and district courts have come out on both sides of the question. Compare, e.g., Castillo, 517 F. Supp. 2d at 449 (ordering posting in some, but not all, requested places), and Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E.D. Cal. 2006) (posting required), with Villarreal v. St. Luke's Episcopal Hosp., 751 F. Supp. 2d 902, 920 n.104 (S.D. Tex. 2010) (no posting required; mail notice sufficient under particular circumstances); Martinez v. Cargill Meat Solutions, 265 F.R.D. 490, 500-01 (D. Neb. 2009) (same unless mailing proves unreliable).

The Court believes requiring posting only in Defendants' own offices is the better outcome here for several reasons. First, as Defendants note, they have no control over some of their employment sites. See Opp. at 13. Second, Plaintiffs have not indicated that mailings and phone calls would somehow be deficient or that they would be unlikely to reach the intended recipients. Third, any posting could imply Defendants' endorsement of the Notice or lead to situations in which Defendants were the ones answering questions about the Notice or lawsuit, when these are tasks that Plaintiffs' counsel should (and no doubt wish to) undertake. A

8

narrower approach to posting thus seems advisable. At the end of the day, it is Plaintiffs who bear the burden of notifying potential class members, and that burden should not be shifted unless they are unable to shoulder it because of circumstances beyond their control or because of Defendants' own actions.

Third, the parties contest the amount of time permitted for opt in, with Plaintiffs seeking 90 days and Defendants 60. The law is split here, too. Compare Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 60 (E.D.N.Y. 2008) (60 days), with Encinas, 265 F.R.D. at 7 (90 days). As Plaintiffs have already collected 16 opt-in forms, see Reply at 2-3, and the case is fairly straightforward, the Court believes 60 days is sufficient.

Fourth, the parties battle over the content of the Notice itself. Plaintiffs have agreed to add language stating: "Defendants dispute the claims and do not acknowledge wrongdoing." Reply at 5. Defendants also seek the striking of any language in the Notice about the underreporting of hours on the ground that such is not a claim under the FLSA. See Opp. at 13. Yet, the point of the Notice is to explain in simple fashion what the case is about. Whether underreporting itself violates the FLSA is immaterial; the reference to underreporting in the Notice gives context to the failure to pay overtime rates. The Court will not order it removed.

### III. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Conditional Class Certification. A contemporaneous Order will so state and will set out specific guidance on identification and notification consistent with this Opinion.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 6, 2014