UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ROBERTO AYALA,** *et al.*,

    **Plaintiffs,**

        v.

**TITO CONTRACTORS, INC.,** *et al.*,

    **Defendants.**

Civil Action No. 13-1603 (JEB)

## MEMORANDUM OPINION

Plaintiffs in this case are construction workers who were employed by Defendant Tito Contractors. They allege that Tito intentionally and systematically denied them overtime wages and, at times, even refused to compensate them for non-overtime hours. In suing Tito and its president, Maximo Pierola, Plaintiffs assert a number of causes of action, including violations of the federal Fair Labor Standards Act and the District of Columbia's Wage Payment and Collection Law.

They now move for partial summary judgment on their claims under the FLSA and DCWPCL. Defendants oppose and cross-move for summary judgment solely on the issue of the equitable tolling of certain statutes of limitations, which relates to the scope of Plaintiffs' potential recovery. Because there is no dispute that Defendants violated the relevant wage laws, the Court will grant Plaintiffs' Motion. As to tolling, determination of that issue requires the resolution of disputed facts, which is inappropriate on summary judgment. The Court will, accordingly, deny Defendants' Motion.

I.     **Background**

Aside from certain tolling-related facts, much of what occurred here is not controverted, so the Court may draw its background from Plaintiffs' Statement of Undisputed Facts. Defendant Tito Contractors, Inc., a construction company owned and operated by Defendant Maximo Pierola, employed Plaintiffs as laborers at jobsites between October 2010 and October 2013.  See PSOF, ¶¶ 2-3.  During this time, Tito – by its own admission – engaged in an extensive scheme to deny Plaintiffs overtime compensation.  Id., ¶¶ 7-9.  Defendants' system differed based on the classification of employee.  For "non-supervisors," Tito avoided paying required overtime rates by compensating employees only for a portion of overtime hours worked. Although it would pay these hours at an overtime rate, the net result was that employees were compensated for all hours worked (overtime or not) at roughly regular-wage rates.  Id., ¶¶ 13-18. For "supervisors," Defendants denied overtime outright; they simply paid – and recorded paying – regular wages no matter how many hours the employees worked.  Id., ¶¶ 19-22.  At the time they employed this strategy, Tito and members of its management team were aware of federal overtime requirements.  Id., ¶¶ 23-28.  No one in particular, however, was in charge of compliance.  Id., ¶¶ 29-30.  And on at least one job, Defendants even refused to compensate employees for non-overtime hours.  Id., ¶¶ 31-37.

On October 18, 2013, Roberto Ayala and other named Plaintiffs brought this suit as a class action against Tito and Maximo Pierola, alleging violations of the FLSA and D.C. and Maryland wage-and-payment laws, as well as claims for breach of oral employment contract and unjust enrichment.  See ECF No. 1.  The Court granted Plaintiffs' Motion for Conditional Class Certification under the FLSA's collective-action provision on February 6, 2014.  See ECF Nos. 25-26.  Plaintiffs now move for summary judgment on their claims under the FLSA and

DCWPCL. See ECF No. 45. Defendants oppose and bring a Cross-Motion for Summary Judgment related only to the issue of equitable tolling. See ECF No. 54.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. See Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.    Analysis**

Plaintiffs move for summary judgment on several aspects of their FLSA and DCWPCL claims. Along with a determination of liability, they seek rulings that: (1) they are entitled to liquidated damages under the FLSA; (2) Maximo Pierola is jointly liable as an "employer"; (3) as the prevailing party, they are entitled to an award of attorney fees; and (4) because Tito willfully violated the FLSA, the statute of limitations under the Act should be extended from two to three years.

Defendants' Motion also concerns the limitations period, but a bit of background is helpful to fully understand their contentions. Throughout discovery, Plaintiffs have sought evidence of unfair wage practices stretching back further than even the longer limitations period would allow. See Order of Aug. 8, 2014 (denying protective order regarding out-of-time evidence). One of their rationales for seeking such evidence is that the limitations period should be equitably tolled under the FLSA due to Defendants' alleged failures to notify Plaintiffs of their rights under the Act. See id. at 1. In other words, Plaintiffs seek a recovery related to wrongdoing that would otherwise be time barred – on the ground that Defendants kept them from timely filing suit regarding these violations. Defendants have previously asked the Court to disallow any tolling when making discovery rulings, which determination the Court deferred. Id. Defendants now renew their argument, contending that tolling is inappropriate as a matter of law, and seek an order so limiting Plaintiffs' recovery.

For ease of analysis, the Court will consider these issues in the following order: (1) liability, damages, and the statute of limitations for FLSA claims; (2) liability under the DCWPCL; (3) joint liability and attorney fees; and (4) the availability of equitable tolling.

A.  FLSA

Plaintiffs first contend that Defendants' overtime-payment practices violated the FLSA, which requires covered employers to pay their employees at least "one and one-half times the regular rate" for all hours worked in excess of forty per week.  See 29 U.S.C. § 207(a)(1).  Defendants, for their part, do not dispute the basis of this claim.  Indeed, "[a]lthough [they] do not agree with certain facts set forth in Plaintiffs' Statement of Undisputed Material Facts, Defendants do not oppose Plaintiffs' Motion for Summary Judgment under the FLSA."  Def. Opp. at 2.  They do, however, "deny that they acted in bad faith or that they engaged in any deceptive or misleading pay practices."  Id.  These caveats are not insignificant, as they affect two further aspects of this cause of action: damages and the appropriate statute of limitations.

As to damages, an FLSA violator is generally liable for all unpaid compensation as well as "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The award of liquidated damages can be avoided only if "the employer shows to the satisfaction of the court that the act or omission giving rise [to the FLSA claim] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260.  The presumption in favor of awarding liquidated damages is strong.  See Falicia v. Advance Tenant Servs., Inc., No. 02-2463, 2005 WL 1522064, at *1 (D.D.C. June 27, 2005).  A good-faith defense "requires 'an affirmative showing of a genuine attempt to ascertain what the law requires, not simply . . . a demonstration of the absence of bad faith.'"  Danesh v. Rite Aid Corp., 39 F. Supp. 2d 7, 13 (D.D.C. 1999) (quoting Dove v. Coupe, 759 F.2d 167, 175-76

(D.C. Cir. 1985)). "In most instances," moreover, "an employer will be able to satisfy [the FLSA's] 'reasonable grounds' requirement only if it has relied on a reasonable, albeit erroneous, interpretation of the [FLSA] or of the regulations issued thereunder." Thomas v. Howard Univ. Hosp., 39 F.3d 370, 373 (D.C. Cir. 1994).

Notwithstanding their assertions to the contrary, Defendants' violations of the FLSA here were neither in good faith nor based on any misunderstanding of the law. Three key parties – Tito's general manager, a payroll manager, and the company president – all had actual knowledge of the FLSA's overtime requirements. See PSOF, ¶¶ 24-27. Yet Defendants made no attempt whatsoever to ascertain whether their payroll practices satisfied these requirements, and no one at Tito was in charge of compliance. Id., ¶¶ 29-30. The practice, moreover, was admittedly intentional and systematic. Id., ¶¶ 7, 9-11, 13-15, 18. Defendants' sole argument on this issue is the unadorned assertion "that they [did not] act[] in bad faith or . . . engage[] in any deceptive or misleading pay practices." Def. Opp. at 2. An opposition to a motion for summary judgment, however, must consist of more than bare denials; it must instead identify specific disputed facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. This Defendants have not done. The undisputed facts in this case show that there was nothing mistaken or in good faith about Defendants' violations. The Court, therefore, finds liquidated damages appropriate as a matter of law. See Thompson v. Linda & A., Inc., 779 F. Supp. 2d 139, 153-54 (D.D.C. 2011) (summary judgment on liquidated damages appropriate in absence of good-faith basis for denial of minimum wages).

The second dispute is similarly resolved. The limitations period under the FLSA is extended from two to three years for "willful violation[s]." 29 U.S.C. § 255(a). An employer's violation is willful if it "either knew or showed reckless disregard for the matter of whether its

6

conduct was prohibited by the statute . . . ." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Knowing that the FLSA applies and "simply decid[ing] not to comply" – as Tito did here – is an example of a willful violation. See Wyland v. D.C. Gov't, 728 F. Supp. 35, 37 (D.D.C. 1990). Defendants' only argument on this issue is the same conclusory statement they offered in the damages context, as well as the observation that "Plaintiffs were aware of and agreed to" Tito's payment practices. See Def. Opp. at 2. Neither contention changes the undisputed fact that Defendants were familiar with the requirements of the FLSA, yet disregarded them. Plaintiffs are therefore entitled to a three-year statute of limitations.

In sum, Defendants are liable for withheld overtime compensation as well as liquidated damages on the FLSA claim; in addition, the three-year statute of limitations will govern. The exact sum that Plaintiffs are entitled to recover remains to be determined in a subsequent proceeding.

    B. DCWPCL

Plaintiffs next seek summary judgment on their DCWPCL claim, which is limited to wages allegedly not paid to two employees, Domingo Zamora and Germias Berganza. This statute provides that "[e]very employer shall pay all wages earned to his employees . . . ." D.C. Code § 32-1302. As in the FLSA context, a prevailing plaintiff in a DCWPCL suit is entitled to unpaid wages as well as liquidated damages. See D.C. Code §§ 32-1303(4), 1308. According to Plaintiffs, Defendants failed to pay these two workers certain wages on a job referred to as the Mt. Pleasant Library project. Because the work was performed pursuant to a government contract, the job was subject to the requirement that Tito pay its workers "prevailing wages" as determined by the Davis-Bacon Act. See PSOF, ¶ 31; 40 U.S.C. §§ 3141-3148. Tito, however, took a page out of its overtime-avoidance playbook and simply ignored a portion of the hours the

employees actually worked, paying them for the rest. See PSOF, ¶¶ 31-37. Through this practice, Plaintiffs received significantly less than was owed for the total hours they worked. Id.

Defendants contend that this cause of action fails for two reasons. First, they complain that the DCWPCL claim is "after-the-fact." Second, they contend that it was "not pursued during the course of discovery." Def. Opp. at 2. Their main gripe stems from the fact that, in response to two of their interrogatories, Plaintiffs never mentioned in "any individualized responses" the Mt. Pleasant Library project or provided information on the employees who worked it. See id. at 3-4. Nor, Defendants note, did they separately identify or enumerate related damages in response to interrogatories. Id. at 4-5. This failure to "adequately respond to discovery," they conclude, "precludes any recovery." Id. at 2. The Court is not persuaded.

As an initial matter, Plaintiffs referenced the DCWPCL no fewer than ten times in their Complaint, and their factual allegations there reveal at least the broad strokes of their claims. See Compl., ¶¶ 10, 13, 18, 41, 54, 82-86. Plaintiffs' responses to interrogatories, moreover, did not unfairly prejudice or mislead Defendants. The first interrogatory referenced by Tito is not even on point. It requested "the basis for" "an agreement or agreements" to be "pa[id] . . . a certain rate of pay" including "when the agreement[] was made, with whom, [and] the rate[] . . . promised." Def. Opp., Exh. 1 (Plaintiffs' Second Supplemental Responses to Defendants' Interrogatories, No. 10) at 22. Any response to this request – no matter how deficient – is irrelevant to the claim that Plaintiffs were not paid for all hours they worked.

In the second interrogatory, Defendants did request facts that support Plaintiffs' claim that "Defendants failed to timely pay [them] their promised and required wage rate for all hours they worked." Id. at 26. In response, Plaintiffs stated, among other things, that "Defendants have confessed to having followed an unlawful policy of paying no overtime or prevailing wages

by manipulating timesheet records" and that "Defendants' documents clearly corroborate the violations that [Plaintiffs] have described." Id.  Plaintiffs, in turn, did substantiate their allegations through Tito's own timesheets and payroll printouts.  See, e.g., Pl. Mot., Exh. 28-1 (Zamora's Timesheet) at 2, 3 (40 and 52 hours worked on Mt. Pleasant Library project); id., Exh. 28-2 (payroll printout showing payment for 15 and 20 hours respectively over same period). Defendants, moreover, do not dispute that their own records support Plaintiffs' case.  In the end, there is nothing unfairly surprising or "after-the-fact" about this cause of action.

Defendants contend, alternatively, that Plaintiffs' claims still fail because there is no private right of action to recover prevailing wages under the Davis-Bacon Act.  See Def. Opp. at 5.  The  DCWPCL claims here, they argue, are identical to those rejected in Johnson v. Prospect Waterproofing Co., 813 F. Supp. 2d 4 (D.D.C. 2011).  In that case, the plaintiffs alleged that their employer had failed to pay them the prevailing-wage rate as established by the Davis-Bacon Act, thus rendering them liable under the DCWPCL.  Id. at 5.  That court noted, however, that the Davis-Bacon Act probably does not give rise to a private right of action, but establishes "instead . . . an administrative process for the recovery of unpaid [prevailing] wages . . . ."  Id.  The plaintiffs could not sidestep this restriction, the court concluded, by dressing up their action in the guise of a DCWPCL claim, when it was "founded exclusively on the Davis-Bacon Act." Id. at 10.  Defendants conclude that Plaintiffs' DCWPCL claim here is likewise an impermissible end run around the Act, as it is "based on the difference between the amounts they received and the amounts they claim they are owed pursuant to the Davis-Bacon Act." Def. Opp. at 6.

Defendants' argument, however, misidentifies the central thrust of the cause of action here.  Plaintiffs do not rely on a failure to pay prevailing wages.  Instead, they allege – and the undisputed facts establish – that Defendants underreported and paid nothing at all to two

Plaintiffs for certain hours worked.  See PSOF, ¶¶ 31-37.  This is the type of claim that the DCWPCL, by its plain terms, was intended to remedy.  As in Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1 (D.D.C. 2010), Defendants "improperly maintained their payroll records," resulting in Plaintiffs' "perform[ance of] work for which they were improperly compensated." Id. at 7.  Specifically, Tito underreported Plaintiffs' hours, see PSOF, ¶¶ 32-36, the result of which was that they were only compensated for a fraction of the hours they worked on the Mt. Pleasant Library project.  See, e.g., id. at ¶ 34 ("Domingo Zamora's timesheets recorded 40 and 52 hours of work . . . .  For this work over these two weeks, Mr. Zamora was paid for 15 and 20 hours of work, respectively.").  That the improperly discounted hours are subject to prevailing wages is of no moment.

Plaintiffs are, therefore, entitled to summary judgment on their DCWPCL cause of action as it pertains to wages withheld from Domingo Zamora and Germias Berganza.  Once again, precise amounts will be determined in a future proceeding.

      C.  Joint Liability and Attorney Fees

Two issues remain from Plaintiffs' Motion.  First, they contend that Defendant Maximo Pierola is jointly liable to Plaintiffs as their "employer."  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "The definition is necessarily a broad one in accordance with the remedial purpose of the Act."  Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 10 (D.C. Cir. 2001) (quotation marks omitted).  The test of whether someone is an employer goes to "the extent to which typical employer prerogatives govern the relationship between the putative employer and employee."  Id. at 11 (quotation marks omitted).  In other words, the Court asks "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised

...

and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 11 (quotation marks omitted).

Plaintiffs argue that Pierola falls under this broad definition of "employer," and Defendants do not dispute the point. He has been the owner and president of Tito at all times relevant to this suit; he had the authority to hire and fire employees; he was in charge of wage administration along with his son; and he was one of three individuals able to authorize overtime hours. See PSOF, ¶¶ 2, 38, 39, 40-44. The Court concludes, based on these undisputed facts, that Pierola is an "employer" and "officer [with] operational control" of Tito as a matter of law. See Ventura, 738 F. Supp. 2d at 5-6 (president and sole owner jointly and severally liable based on ownership interest, supervisory duties, and powers over hiring and wages). The same result, moreover, holds under the DCWPCL, which follows the FLSA. See id. at 6 ("[B]ecause the DCWPCL is construed consistently with the FLSA, [the defendant] is an 'employer' under the DCWPCL and is liable for the corporate defendants' violations of its wage and overtime provisions."). Pierola is, therefore, jointly and severally liable for Tito's FLSA and DCWPCL violations.

Second, Plaintiffs seek an award of attorney fees. As the prevailing party in their FLSA and DCWPCL claims, the Court finds that they are entitled to such an award in an amount to be determined. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); D.C. Code § 32-1308(b) ("The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow

11

costs of the action, including costs or fees of any nature, and reasonable attorney's fees, to be paid by the defendant.").

    D.  Equitable Tolling

Having covered Defendants' liability under the FLSA and DCWPCL, the Court turns now to the question of equitable tolling. As noted above, Plaintiffs in this case have sought evidence of unfair wage practices that predate the relevant statute of limitations on the theory that it should be tolled. To this end, it appears, they seek to enlarge their recovery period by at least a year and a half. See Pl. Opp. to Mot. for Protective Order (ECF No. 38) at 6 (noting that "the primary records sought go back no further than January 2009"). Defendants argue that such tolling is inapplicable.

As a general rule, equitable tolling is appropriate "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Norman v. United States, 467 F.3d 773, 776 (D.C. Cir. 2006) (quoting Irwin v. Dep't of Veterans, 498 U.S. 89, 96 (1990)). It also "permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim." See Smith-Haynie v. D.C., 155 F.3d 575, 579 (D.C. Cir. 1998). Equitable tolling is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007). To invoke the doctrine, a plaintiff must generally show "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way." Holland v. Florida, 560 U.S. 631, 649 (2010) (discussing the doctrine in the context of *habeas corpus*). "[C]ourts do not generally recognize lack of knowledge of the law" as a basis for tolling. Nat'l Ass'n of Mfgs. v. Nat'l

Labor Relations Bd., 717 F.3d 947, 963 (D.C. Cir. 2013), rev'd in part on other grounds, Am. Meat Inst. v. United States Dep't of Agric., 760 F.3d 18, 23 (D.C. Cir. 2014).

Plaintiffs' tolling claim rests, in large part, on the allegation that Tito failed to post a notice of employees' FLSA rights as required by the Act, which provides:

> Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

29 C.F.R. § 516.4. Defendants counter in their Motion that tolling is precluded as a matter of law. They advance four related arguments on this front: (1) they satisfied the FLSA's requirement by posting an explanation of the Act where employees could see it; (2) even if they failed to do so, that failure would not entitle Plaintiffs to equitable tolling; (3) regardless of posting, equitable tolling is not appropriate in this case because Defendants did not mislead Plaintiffs; and (4) Plaintiffs are not entitled to tolling because they were not diligent in pursuing their claims.

*1. Posting Requirements*

On the first issue, Defendants contend that there is no genuine dispute as to whether they posted the required workplace notices in Tito's main office. They present the testimony of several personnel who attest to the fact that the poster has been displayed for years. For instance, Kenny Brown, the general manager, testified that he selected the place for the poster as long as 22 years ago and that for the last 5 years it has been posted in the same prominent place on the first floor. See Def. Mot., Exh. 4 (Deposition of Kenny Brown) at 73:13-22. Another employee, Julissa Talledo, professed to ordering the most recent version in 2012. Id., Exh. 5 (Declaration of Julissa Talledo), ¶ 3; id., Exh. 5A (Online Receipt). And Alex Pierola, a manager in the

office, also confirmed the longstanding presence of the poster. Id., Exh. 6 (Deposition of Alex Pierola) at 207:2-12. Although Plaintiffs have presented the declarations of employees who claim they never saw the FLSA poster in Tito's office until after the lawsuit was filed, see Pl. Opp., Exh. A (Pl Resp. to DSOF), ¶ 6, Defendants maintain that these averments do not create a genuine dispute. They chalk them up to mistake and contend that the failure to see a poster does not establish its nonexistence – especially as weighed against the overwhelming evidence that it was, in fact, there.

Defendants liken this case to Veerkamp v. U.S. Sec. Associates, Inc., No. 04-49, 2006 WL 2850020 (S.D. Ind. Sept. 29, 2006), in which a group of plaintiffs also sought to toll the statute of limitations based on "evidence that [the defendant] did not post the required notice of employees' FLSA rights." Id. at *5. As is the case here, their evidence consisted of "affidavits from several plaintiffs testifying that they did not see FLSA notices at the locations where they worked for [the defendant]." Id. That court, however, found equitable tolling unavailable, noting, among other things, that "the statement that an employee did not see such a notice does not mean there was no notice." Id. at *6.

This last-quoted language in Veerkamp, however, was only one among several reasons that the court found equitable tolling inappropriate. It also concluded, for instance, that employees had "received manuals that informed them at least generally about the FLSA" and that the plaintiffs who testified as to not seeing "posters at their actual work locations . . . were outside contractors working at locations that [the defendant] did not control." Id. Importantly, the plaintiffs' affidavits in that case did not dispute the defendant's assertion that notices "were posted at [its] own office . . . or that employees received written materials with information about the FLSA and overtime pay and related issues." Id. Indeed, their "affidavits [did] not even

14

claim the plaintiffs were not aware of their rights under the FLSA." Id. In this case, on the other hand, there is no evidence of supplementary notifications of FLSA rights, and Plaintiffs have provided testimony regarding the lack of posting in the main office.

The Court, at bottom, is not convinced that the presence of the poster in the main office is beyond dispute. The "[a]pplication of equitable tolling is solely within the Court's discretion." Smith v. Holder, 806 F. Supp. 2d 59, 63 (D.D.C. 2011). At this stage of the proceedings, the Court must be satisfied that it could not possibly find in Plaintiffs' favor. This it cannot do. It is possible, as Defendants contend, that Plaintiffs' witnesses were mistaken; perhaps they simply failed to notice the poster. Yet it is also possible that they did not see a notice posted because there was none to see. And it may be asking a bit much to require affirmative testimony that there was no poster in this context. Ultimately, because some employees testify to seeing the poster and others testify to not seeing it, the Court finds that the question of posting remains a disputed material fact at this stage of the proceedings.

This conclusion moots a second major dispute between the parties. Throughout briefing, Plaintiffs have maintained that Tito was required to post FLSA notices not only at its headquarters, but also at worksites – their rationale being that laborers at jobsites rarely, if ever, went to the main office. Because the Court finds the posting at the main office disputed, however, it need not decide the issue of any further obligations to post.

### 2. *Effect of Failure to Post*

The next issue is the legal effect of a failure to post. Defendants maintain that, even if they failed to post as required by law, such omission is not sufficient to toll the statute of limitations. See Def. Mot. at 12. Courts have split on the question, and the D.C. Circuit, it appears, has not determined whether a failure to post entitles a late-filing plaintiff to tolling. On

Defendants' side, several courts have found that it does not. See, e.g., Archer v. Sullivan Cnty., Tenn., 129 F.3d 1263 (6th Cir. 1997) ("We are not persuaded that the [defendant's] failure to post [the FLSA] notice justifies invocation of the tolling doctrine."); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) (failure to post "without more, does not suffice"); see also Kazanzas v. Walt Disney World Co., 704 F.2d 1527, 1530-31 (11th Cir. 1983) (drawing similar conclusion regarding Age Discrimination in Employment Act). Plaintiffs, conversely, point to several courts that have come to the opposite conclusion. See, e.g., Cruz v. Maypa, 773 F.3d 138, 147 (4th Cir. 2014) (extending failure-to-post tolling in the ADEA context to the FLSA); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) ("[F]ailure to provide required notice of the governing legal requirements may be a sufficient basis for tolling."); Kamens v. Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations.").

The Court, however, need not count cases to decide this issue. The doctrine of equitable tolling is animated – not surprisingly – by concerns of equity, and, as noted above, entitlement to it rests solely within the discretion of the Court. The fallout of these two observations is that the Court need not, and likely should not, establish a *per se* rule regarding the effect of a failure to post FLSA notices. In some circumstances, a failure alone might be sufficient. But the relevant question for tolling is the effect of the failure to post in the context of the entire exchange between employer and employee. If, for instance, such a failure was accompanied by other active misrepresentations, was part of a larger scheme of deception, or, as is the case here, pertained to employees with limited education, then it might well compel tolling. See Ramirez v. CSJ & Co., Inc., No. 06-13677, 2007 WL 1040363, at *3 (S.D.N.Y. Apr. 3, 2007). If, on the

other hand, Plaintiffs were to seek tolling based solely on this failure, but there was other evidence of the employer's alerting its employees to their rights, or if the failure was only partial, then it alone might not be sufficient to toll. The wisest approach to the question is to look case by case.

At the end of the day, entitlement to equitable tolling will depend on more than Defendants' alleged failure to post FLSA notices. The entire course of dealings is relevant to the question, and this course of dealings can only be fully established at trial.

### 3. Misleading Conduct

Defendants next contend that – regardless of any failure to post – equitable tolling is inappropriate here because they did not make "any misrepresentations or engage[] in any activity that prevented Plaintiffs from exercising their rights under the FLSA." Def. Mot. at 14-15. Defendants' central argument on this point is that Tito did not actively hide its illegal activity from its employees and therefore was not misleading them. This they have not proven. As a result, even if some form of active deception were required in this context, Defendants are still not shielded from the possibility of equitable tolling.

Defendants admittedly falsified paystubs, thereby hiding the paper trail of their illegal activity. There is evidence in the record, moreover, that they failed to inform Plaintiffs of the company's overtime practices, see Pl. Opp., Exh. J (Plaintiffs' Second Supplemental Interrogatory Responses) at 22-25, and threatened retaliation against Plaintiffs who questioned Tito's policies. See id. at 26-31. As was the case in the context of the disputed failure to post, the exact nature of Tito's interactions with Plaintiffs and the atmosphere created by these communications will inform whether and to what extent Defendants actively misled Plaintiffs.

This picture will, in turn, depend on the facts established by choosing between conflicting accounts. In short, a dispute of material fact remains on this issue.

### 4. *Due Diligence*

Finally, Defendants contend that Plaintiffs did not exercise due diligence regarding their wage claims. The workers knew, say Defendants, that they were entitled to overtime compensation throughout their employment, yet failed to pursue their legal rights. Tito likens this case to Byrd v. District of Columbia, 807 F. Supp. 2d 37 (D.D.C. 2011), in which the plaintiff sought to excuse a late-filed complaint based, in part, on her employer's failure to post a required EEOC notice. Id. at 59-60. That court did not address the failure to post because it found that the plaintiff had not diligently pursued her rights. Id. at 60. It concluded that she had "not take[n] reasonable steps to obtain the knowledge she lacked," could "not remain complacent in the face of discrimination," and was not "relieved of a duty to diligently pursue her charges." Id. at 61. Plaintiffs here, Defendants contend, are in a similar position. Several had complained to supervisors about overtime long before filing this lawsuit. See Def. Mot., Exh. 8 (Pl. Second Supplemental Responses to Def. First Set of Interrogatories, No. 8) at 16. And although they knew of their right to overtime pay or, at the very least, suspected something was wrong, they did nothing to pursue their rights until 2013.

The issue, however, is not as easy as all that. At least some of the Plaintiffs aver that they did not know they had a legal claim to overtime pay until shortly before this suit was filed. See Pl. Opp., Exh. C (Declaration of Jose Berganza), ¶ 12; id., Exh. E (Declaration of Jose Amaya), ¶ 13. These competing accounts raise a factual dispute as to Plaintiffs' actual knowledge of their rights. See Blake v. CMB Const., No. 90-388, 1993 WL 840278, at *2 (D.N.H. Mar. 30, 1993) (tolling where employer failed "to post a statutorily required notice" and engaged in "general

course of conduct likely to confuse . . . employees with regard to their overtime compensation rights," even though employee was "aware of the inconsistency in [employer's] policies"). As another court put the matter in similar circumstances, "Resolving [the] differing versions of the events into a coherent whole involves assessments of the parties' credibility and choosing between conflicting narratives . . . ." Upadhyay v. Sethi, 848 F. Supp. 2d 439, 446 (S.D.N.Y. 2012). Summary judgment on the issue of equitable tolling is, therefore, inappropriate. See id. at 445 (denying summary judgment on equitable tolling in the face of "numerous dueling affidavits").

## IV.     Conclusion

Defendants in this case intentionally denied Plaintiffs overtime and failed to compensate them for hours worked, even though they knew they were required to do so by law. They are jointly and severally liable to Plaintiffs for these violations – for proper payment withheld, liquidated damages, and attorney fees. As to the statute of limitations, the willful nature of Defendants' violations extends it to three years, and whether that date will be equitably tolled will depend on the findings of fact at trial. For the foregoing reasons, the Court will grant Plaintiffs' Motion for Summary Judgment and deny Defendants'. An Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: March 4, 2015